IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA,**

No. 3:19-cr-00458-MO-1

v.

**JOHNL JACKSON,**

OPINION AND ORDER

Defendant.

**MOSMAN, J.,**

This matter is before me on Defendant's Motions to Dismiss. [ECFs 112, 113, and 114]. Johnl Jackson seeks dismissal of Count Five of the Second Superseding Indictment on two grounds. First, that the dismissal of this count in an earlier case should have been entered with prejudice under Federal Rule of Criminal Procedure 48(a), and second, that his re-prosecution in the second case violates the Speedy Trial Act.

Mr. Jackson seeks dismissal of the entirety of the Second Superseding Indictment on three grounds: First, that a pre-indictment delay violated his right to due process under the Fifth Amendment, second that the delay following his indictment in the initial criminal case violated his right to a speedy trial under the Sixth Amendment, and third, that the government acted in bad faith and failed to preserve relevant evidence. I disagree with Mr. Jackson. For the reasons stated below I DENY his Motions to Dismiss.

1 – OPINION AND ORDER

## BACKGROUND

Mr. Jackson's Motions to Dismiss span two criminal cases: the first case, Case No. 19-186, and the second case, Case No. 19-458.[1] The second case is the one before me now. The charges against Mr. Jackson in the first case arose from an investigation into the alleged sex trafficking crimes of a ring of individuals led by Keonte Scott. The government's allegations are that Mr. Jackson initially provided alcohol, marijuana, and cocaine to minor victims of the sex trafficking ring at his home before his co-defendants trafficked the girls.

Mr. Scott eventually found himself in jail. One of the minor victims, MV4, stayed in touch with another of Mr. Jackson's co-defendants, Diana Petrovic, over social media. Mr. Jackson and Ms. Petrovic allegedly rose to fill the void left by Mr. Scott trafficked MV4 and her friend MV5 through August and September of 2018.

Government task force officers interviewed MV4 on February 8, 2019. She identified Mr. Jackson only as "Nelly" and brought MV5 to the attention of investigators. Investigators then confirmed MV5's identity through DMV records approximately a week later. According to MV4, Ms. Petrovic and Mr. Jackson took the minor victims to a barn in Washington State where they trafficked the minor victims. MV4 became uncomfortable and left with the man who she was supposed to have sex with, leaving MV5 alone at the barn with Mr. Jackson and Ms. Petrovic. The following day, MV5 told MV4 that she had been raped by ten men.

The investigation into the Scott trafficking organization continued from February 2019 to May of 2019. During that period, officers interviewed over a dozen witnesses and suspects, talked with a victim's family, and executed search warrants on six suspect cell phones.

---

[1] The defendants in Case No. 19-186 were Keonte Desmond Scott, Evan Blake Barajas, Diana Petrovic, Johnl Jackson, and Jamil Timpke-Rhoades. The defendants in Case No. 19-458 are Johnl Jackson and Diana Petrovic.

On May 8, 2019, a grand jury charged Mr. Scott, Evan Blake Barajas, and Ms. Petrovic in a six-count indictment in the first case. The charges all related to MV1, MV3, and MV4. Count six of the indictment charged only Ms. Petrovic for transporting MV4 to the barn for the purpose of engaging MV4 in sexual activity. After investigators identified "Nelly" as Mr. Jackson in June 2019, the grand jury superseded and added him to count six of the indictment.

The investigation into the sex trafficking ring continued over the summer and into the fall of 2019. On September 23 and again on September 24, Mr. Jackson moved to sever his case from his codefendants. The government moved to dismiss Mr. Jackson without prejudice on September 27, 2019, and the Court granted the government's motion the same day, finding that the government moved in good faith. Mr. Jackson objected, arguing the government lacked a good faith basis for dismissal. Around this same time, investigators had contacted MV5 and secured an interview with her for October 2, 2019. During the period between September 27 and October 2, 2019, investigators interviewed MV5, her mother, and her grandfather.

In her interview on October 2, 2019, MV5 described Mr. Jackson as playing a larger role in trafficking the minor victims than MV4 had previously. MV5 said Mr. Jackson was the one in charge and Ms. Petrovic was his "mouthpiece." MV5 described how Mr. Jackson groomed her by forcing her to perform frequent and varied sex acts in an attempt to desensitize her. MV5 recalled a period she spent in a hotel with defendants where Mr. Jackson took MV5's phone and put it in a drawer with guns to prevent her from calling for help.

After MV5's interview, the government reindicted Mr. Jackson and Ms. Petrovic on October 9, 2019, in the current case, Case No. 19-458, and charged them with crimes against MV5 for conduct that occurred between August and September of 2018. The grand jury

superseded on December 4, 2019 and returned a ten-count indictment that included crimes against both MV4 and MV5.

## DISCUSSION

First, I address Mr. Jackson's Fed. R. Crim. Pro. 48(a), failure to preserve evidence, Sixth Amendment, and Fifth Amendment claims. I then turn to Mr. Jackson's Speedy Trial Act argument. Generally, Mr. Jackson's allegations center around the government's decisions in conducting its investigation, including the dismissal and reindictment, and the alleged impact or prejudice of these decisions to Mr. Jackson.

### I.    Mr. Jackson Fails to Establish His Dismissal from the First Case Should Have Been with Prejudice Under Federal Rule of Criminal Procedure 48(a).

Mr. Jackson alleges that, under Fed. R. Crim. Pro. 48(a), the dismissal of Count Six in the first case should have been with prejudice because the government did not seek the dismissal in good faith. Def.'s Mot. to Dismiss, Case No. 19-458 [ECF 112] at 2. I disagree.

Under Rule 48(a), the government may "with leave of court, dismiss an indictment, information, or complaint." Prosecutors are the "first and presumptively the best judge of whether a pending prosecution should be terminated." *United States v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988) (quoting *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)). A prosecutor's initial decisions do not "freeze future conduct." *United States v. Goodwin*, 457 U.S. 368, 382 (1982). District courts have limited discretion to deny the government's motion to dismiss. *United States v. Gonzalez*, 58 F.3d 459, 461 (9th Cir. 1995).

Prosecutors do not, however, act with unilateral discretion. A "principal purpose" of the leave of the court requirement in Rule 48(a) is "to protect a defendant against prosecutorial harassment." *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1008 (9th Cir. 2000) (citing *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977)). A fundamental consideration of assessing

whether a prosecutor's dismissal motion is proper is whether the dismissal was made in good faith. *Wallace*, 848 F.2d at 1468. Courts have found bad faith if a dismissal is motived by a desire to gain a tactical advantage or if the reason given for the dismissal is a sham. *United States v. Salinas*, 693 F.2d 348, 352–53 (5th Cir. 1982) (the government's filing a motion to dismiss after empaneling jury and moments before trial was to begin in order to obtain a more favorable jury constitutes bad faith).

In *Wallace*, the Ninth Circuit found that the government acted in good faith when the government dismissed an indictment on narcotics charges with the intention of reindicting the defendant on the same narcotics charges but with additional tax code violations. 848 F.2d at 1469. The Ninth Circuit found that even when the government did not charge additional criminal conduct, but had anticipated doing so, the reason for dismissal was not a sham. *Id*.

Additionally, in *Wallace* the Ninth Circuit considered the interplay between a motion to dismiss filed by the government and the government simultaneously seeking additional witness testimony and found that "it is not clear to us that the government's dismissal was motivated by its desire to get that testimony or even that such a desire would have been an improper motivation." *Id*.

Mr. Jackson argues on two grounds that the government's motion to dismiss in the first case lacked a good faith basis. First, he contends the language the government used in its motion was misleading. Second, he contends the dismissal helped the government by suppressing the disclosure of exculpatory evidence—specifically MV5's cell phone data. Def.'s Mot. to Dismiss, Case No. 19-458[ECF 112] at 4–5.

The language in the government's motion that Mr. Jackson takes issue with stated that the government was still "actively investigating" the case and it had "recently identified

additional criminal conduct." Gov't's Mot. to Dismiss, Case No. 19-186 [ECF 74] at 1. Mr.

Jackson contends that the government lacked "recently discovered additional criminal conduct"

because the government had known about MV5 since February of 2019 and waited until October

2019, after dismissing Mr. Jackson from the first case, to interview her. Def.'s Mot. to Dismiss,

Case No. 19-458 [ECF 112] at 4. He also argues that the government let MV5's cell phone data

expire on or around September 8, 2019. *Id*. at 5.

But, the government was, in fact, still actively investigating the alleged criminal conduct.

In the week prior to the government's motion to dismiss the government's forensics lab had

discovered additional evidence of sex trafficking on another co-defendant's phone. Gov't's

Resp., Case No. 19-458 [ECF 210] at 20 (citing repeatedly to discovery). Task force officers had

set a date certain to meet with MV5 and in the period between Mr. Jackson's dismissal and

reindictment spoke with MV5, her mother, and grandfather. *Id*. The conversation with MV5

revealed that Mr. Jackson played a larger role in her trafficking than initially thought by

prosecutors. *See id.* at 10–11. Here, as in *Wallace*, the Court lacks any evidence that shows that

the government's dismissal was sought only so it could interview MV5. In fact, under *Wallace*,

the Ninth Circuit contemplated that even if this evidence existed (which it does not in this case)

it would not necessarily be an improper motive for dismissing a case against a criminal

defendant. 842 F.2d at 1469.

Investigations into sex trafficking crimes involving minor victims are especially

sensitive. Detective Yonsoo Lee attests to this in his affidavit submitted with the Government's

Response to Mr. Jackson's Motion to Dismiss. He stated, "victims in these incidents will only

disclose meaningful information regarding their traumatic experiences when they feel able to do

so; and further, they feel they are in a secure place that they feel safe." Gov't's Resp., Case No.

19-458 [ECF 210] Ex. 1 at ¶ 14. Detective Lee's testimony during the August 30, 2021 hearing also supports this point. Tr. [ECF 238] at 36:21–37:9. This evidence also supports the government's decision to interview MV5 when it did.

The government concedes that its phrasing in the Motion to Dismiss should have been "more aspirational and less definite." *Id*. at 21. I agree. But this does not show that the government acted in bad faith. The government was not sitting idly by as Mr. Jackson contends. Instead, it "[was] identifying and interviewing witnesses, writing and executing search warrants and subpoenas, and tracing the lines of this [multi]-defendant, six-victim, two-state, multi-year child exploitation ring." Gov't Resp., Case No. 19-458 [ECF 210] at 22.

On August 30, 2021, the Court held oral argument on Mr. Jackson's Motions to Dismiss. Two government investigators testified and were subject to cross-examination. After hearing the testimony from the government's investigators, I find that the government did not let MV5's cell phone data intentionally expire, and that the government did not strategically delay contacting MV5 or her family to gain a tactical advantage. Tr. [ECF 238] at 48:4–20. Therefore, I find that the government did not act in bad faith when it sought to dismiss Mr. Jackson from the first case.

At the hearing I learned that this investigation was one of many ongoing sex trafficking investigations. Tr. [ECF 238] at 25:12–15. There was only one task force officer investigating these types of cases. *Id*. at 25:16–19. The task force officers who testified gave details that demonstrated to the Court that they were working on a number of aspects of this investigation to move it forward during the period in question—confirming what the government stated in its Response to Mr. Jackson's Motion to Dismiss. *Compare Id*. at 23:13–25:11; *with* Gov't Resp., Case No. 19-458 [ECF 210] at 22. The testimony also confirmed that the government did not

intentionally let MV5's cellphone data expire and did not intentionally fail to retrieve MV5's physical cellphone to hamper Mr. Jackson's defense. Tr. [ECF 238] at 25:20–26:11; 51:5–51:23.

I found the two testifying witnesses credible based on demeanor evidence combined with the strength of the witness' explanations as to the course of the investigation. My findings on this point include not just the period of delay focused on in the hearing regarding the acquisition of MV5's cell phone, MV5's cell phone data, and when MV5 was interviewed, but the entire period of the investigation into Mr. Jackson's alleged criminal conduct.

Because Mr. Jackson fails to demonstrate that the government acted in bad faith, I DENY his Motion to Dismiss Count Five [ECF 112] under Fed. Rule Crim. Pro. 48(a).

## II.    Mr. Jackson Fails to Establish the Inadvertently Lost Evidence Was Exculpatory or that the Loss Occurred in Bad Faith.

Mr. Jackson next moves to dismiss the second indictment on the grounds that the government allegedly failed to preserve MV5's physical cell phone or the data from her cell service provider. Def.'s Mot. to Dismiss, Case No. 19-458 [ECF 114] at 1. Mr. Jackson argues that the government knew that the cell phone data would expire at the end of September 2019 and that it failed to preserve the data. *Id*. at 3.

Whenever evidence is permanently lost, "courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *California v. Trombetta*, 467 U.S. 479, 486 (1984). Failure to preserve potentially useful evidence is only a violation of due process if "a criminal defendant can show bad faith on the part of the police." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). A defendant must show that: (1) the evidence is potentially exculpatory, (2) the destruction of the evidence was done in bad faith, and (3) the defendant has no alternative means of proving his point. *See United States v. Vera*, 231 F. Supp. 2d 997, 999 (D. Or. 2001).

8 – OPINION AND ORDER

Here, Mr. Jackson fails to show that the evidence is potentially exculpatory or that the loss of the evidence occurred in bad faith. First, at the hearing on August 30, 2021, Mr. Jackson failed to establish that the evidence was potentially exculpatory. Tr. [ECF 238] at 51:9–23; 82:23–83:5. Based off of the testimony I heard, it is purely speculative whether the evidence may have helped—or hurt—Mr. Jackson's case. *Id*. at 83:2–5. Second, as previously discussed, at the hearing I found that the government did not act in bad faith when it sought to dismiss Mr. Jackson from the first case. Specifically, as a part of my good faith finding, I found that the government did not know MV5's cell phone records would expire and did not fail to acquire MV5's physical cell phone in bad faith. *Id*. at 82:16–83:18. Because Mr. Jackson fails to prove the first two prongs of the test articulated in *United States v. Vera*, I do not address the third prong.

Therefore, I DENY Mr. Jackson's Motion to Dismiss for Failure to Preserve Evidence. Def.'s Mot. to Dismiss, Case No. 19-548 [ECF 114].

### III.    Mr. Jackson Fails to Establish Any Constitutional Violation.

#### a.    Because the Government Proceeded with Reasonable Diligence in Its Investigation, there is No Violation of Mr. Jackson's Sixth Amendment Right.

Mr. Jackson's second constitutional argument is that the delay following the indictment in the first case violated his right to a speedy trial under the Sixth Amendment and therefore the indictment in the second case should be dismissed. Def.'s Mot. to Dismiss, Case No. 19-458 [ECF 113] at 1. The government first indicted Mr. Jackson on June 5, 2019 in the first case and at the time he filed this motion his trial was set for September 14, 2020 in the second case. *Id*. at 8.[2]

---

[2] At this point in time, the delay from Mr. Jackson's initial indictment on June 5, 2019 to his currently set trial date of December 13, 2021 is 31 months. Case No. 19-458 [ECF 201].

The Sixth Amendment of the United States Constitution affords criminal defendants a right to a speedy trial. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial…"). This right attaches at arrest, is tolled after a Rule 48(a) dismissal, and reattaches when the defendant is reindicted. *See Wallace*, 848 F.2d at 1469. In *Barker v. Wingo*, the United States Supreme Court established a four-part test to determine whether the government has violated this right. 407 U.S. 514, 530 (1972). The four factors are: (1) the length of delay, (2) the reason for it, (3) the defendant's assertion of his speedy trial rights, and (4) prejudice to the defendant from the delay. *Id.*

The length of delay is a threshold issue. *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003). A period between indictment and trial is presumptively prejudicial if it approaches one year. *Id.* at 1161–62 (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).

Because the time from Mr. Jackson's initial indictment in the first case to the previous trial date of September 4, 2020 is over a year, the length of delay is presumptively prejudicial.[3] *Gregory*, 322 F.3d at 1161–62. The Court must next consider the second factor—the reason for the delay.

"The second factor, the reason for the delay, is 'the focal inquiry'". *United States v. Alexander*, 817 F.3d 1178, 1182 (9th Cir. 2016) (quoting *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 739 (9th Cir. 1989)). If "the delay was wholly justifiable because the government proceeded with reasonable diligence," then "the defendant's speedy trial claim generally cannot succeed" without showing "actual prejudice result[ed] from the delay." *Id.* (citing *Doggett*, 505

---

[3] The Court's calculation centers on Mr. Jackson's previous trial date because that is the date focused on in his motion.

U.S. at 656). Alternatively, "[i]f the government intentionally delayed or negligently pursued the proceedings…prejudice may be presumed." *Id*.

Here, Mr. Jackson argues that the government's delay in questioning MV5 suggests either gross negligence or a tactical decision. Def.'s Mot. to Dismiss, Case No. 19-458 [ECF 113] at 9. Specifically, Mr. Jackson states that the government should not have waited from February 2019, when it first learned MV5's identity until October 2019 to interview MV5. *Id*.

As discussed in the two preceding sections, the government acted in good faith when it sought to dismiss Mr. Jackson from the first case. The government did not act in bad faith in choosing to interview MV5 when it did, and the government did not intentionally suppress evidence or let cell phone data expire.

The factual analysis that supports my finding of good faith also supports a finding that the government acted with reasonable diligence for Sixth Amendment purposes. As previously discussed, the testimony at the hearing on August 30, 2021 demonstrated that the government worked with reasonable diligence to undertake this complex, sensitive investigation into the sex trafficking of minor victims. Because the government acted with reasonable diligence, Mr. Jackson would have to demonstrate actual prejudice from the delay. I will therefore consider the third and fourth *Barker* factors.

Under the third *Barker* factor, a defendant must assert his right to a speedy trial. 407 U.S. at 531–32. The record demonstrates that Mr. Jackson asserted his speedy trial right starting at least on September 18, 2019. *See e.g.*, Case. No 19-186 Def.'s Objs. [ECF 62] at 1 (objecting to postponement of trial date).

Mr. Jackson fails to demonstrate prejudice as required by the fourth *Barker* factor. In *Barker* the Supreme Court identified that in assessing prejudice to a defendant, the most serious

interest that should be considered is whether the defense has been impaired by the delay. 514

U.S. at 532. Mr. Jackson argues that the delay caused the alleged suppression of data, which he

contends prejudiced his defense. Def.'s Mot. to Dismiss, Case No. 19-458 [ECF 113] at 10.

However, as previously discussed, at the hearing, Mr. Jackson failed to establish that the

phone data was exculpatory. It is purely speculative that MV5's cell phone data would help his

defense, and this is insufficient to demonstrate that Mr. Jackson was actually prejudiced by the

unintentional and unknowing loss of this data. Additionally, Mr. Jackson failed to demonstrate

that the government intentionally delayed reaching out to MV5. Instead, the hearing revealed

that the government made strategic, investigative decisions when dealing with the minor victims

of alleged sex-trafficking crimes to build trust and rapport with them. Because the government

did not intentionally delay or negligently pursue proceedings, there is no presumption of

prejudice.

Therefore, I find that Mr. Jackson's constitutional right to a speedy trial was not violated.

Therefore, I DENY Mr. Jackson's Motion to Dismiss for Unconstitutional Delay. Def.'s Mot. to

Dismiss, Case No. 19-458 [ECF 113].

> **b. Mr. Jackson Fails to Establish the Time Between the Alleged Conduct and His Indictment Constitutes a Violation of His Fifth Amendment Right to Due Process.**

Mr. Jackson argues that the 13-month delay between the alleged conduct that occurred in

August and September of 2018 and the return of the indictment in the second case on October 9,

2019 violates his right to due process under the Fifth Amendment of the United States

Constitution and the Second Superseding Indictment should be dismissed in its entirety. Def.'s

Mot. to Dismiss, Case No. 19-458 [ECF 113] at 4. I disagree.

When charges are brought within the statute of limitations period, "the Due Process Clause [of the Fifth Amendment] has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). In *Lovasco*, the United States Supreme Court found that 18-months between the alleged offense and the indictment did not violate the defendant's due process rights. *Id.* at 784, 796–97.

The 13-months between the alleged criminal activities and the second indictment fall comfortably within the time frame from *Lovasco*. Therefore, I DENY Mr. Jackson's Motion to Dismiss for Unconstitutional Delay. Def.'s Mot. to Dismiss, Case No. 19-458 [ECF 113].

IV.    **Mr. Jackson Fails to Establish a Violation of the Speedy Trial Act.**

Mr. Jackson's final argument is that his re-prosecution in the second case violates the Speedy Trial Act ("STA") and that Count Five of the indictment should be dismissed with prejudice. Def.'s Mot. to Dismiss, Case No. 19-458 [ECF 112] at 1. Both Mr. Jackson and the government put forward numerous calculations for Mr. Jackson's speedy trial clock over the course of the briefing on this motion and at the hearing. I address both parties' arguments as they stand after the hearing. Ultimately, I find that Mr. Jackson's speedy trial clock has not expired—14 days remain.

    a.    **The Speedy Trial Act**

Under the STA, a defendant must be brought to trial within 70 days of his indictment or first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). If the 70-day period—not including excludable delay—is exceeded the court must dismiss the indictment on defendant's motion. *United States v. King*, 483 F.3d 969, 972 (9th Cir. 2007); 18 U.S.C. § 3162(a)(1).

In cases involving multiple criminal defendants, there is a preference for joint trials. *United States v. Tootick*, 952 F.2d 1078, 1080 (9th Cir. 1991). In a case involving multiple

defendants, the speedy trial clock computation begins with the last arraigned co-defendant. *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986).

Section 3161(h)[4] of the STA lists periods of delay that must be excluded in computing the time within which the trial must commence. At play in this case are four subsections of § 3161(h): § 3161(h)(1)(D) and § 3161(h)(1)(H) (governing delays attributable to pretrial motions); § 3161(h)(5) (governing dismissal at government's request and reindictment on same charge); and § 3161(h)(7)(A) (governing delays resulting from continuances granted by the district court).

First, under § 3161(h)(1)(D), certain delays attributable to pretrial motions are excludable from a defendant's speedy trial clock. In interpreting the motions exclusion, the Supreme Court established two categories of motions: "those that require a hearing and those that do not." *United States v. Medina*, 524 F.3d 974, 978 (9th Cir. 2008) (citing *Henderson*, 476 U.S. at 329–30). If a pretrial motion does not require a hearing, "the period from the date the motion was taken under advisement until the court rules on the motion, but no more than 30 days, may be excluded." *Id.* at 978–79 (citing *Henderson*, 476 U.S. at 329). Alternatively, if a pretrial motion requires a hearing, one period of delay the district court must exclude is the period from the date the motion was filed to the conclusion of the hearing on the motion. *Id.* at 979 (citing *Henderson*, 476 U.S. at 329–30). Motions to sever or suppress generally require a hearing. *Id.* at 983.[5]

---

[4] The United States Congress amended the Speedy Trial Act in October 2008 in Pub. L. 110-406 § 13. As a result, the statutory sections discussed in cases that predate the amendment do not line up with the current version of the Act. Importantly, the relevant text of the sections discussed in this case remain unchanged by the 2008 amendments. *Compare United States v. Medina*, 524 F.3d 974, 979 nn. 1–2. (9th Cir. 2008) *with* 18 U.S.C. § 3161(h)(1)(D), 18 U.S.C. § 3161(h)(1)(H), and 18 U.S.C. § 3161(h)(7)(A).

[5] Neither of the two narrow exceptions to the motions rule apply here. *Medina*, 524 F.3d at 979 ("First, if a district court continues a motion until after trial, the court may not exclude the time while the postponed motion is pending. Second, we have made an exception for certain pro forma motions to compel discovery in a criminal case where the motions required no decision by the district court....'" (internal quotations omitted).

Second, under § 3161(h)(5), if the government dismisses an indictment and recharges the defendant "for the same offense, or any offense required to be joined with that offense" then the speedy trial clock is tolled, not reset, during the period between dismissal and refiling. *United States v. Barraza-Lopez*, 659 F.3d 1216, 1220 n.5 (9th Cir. 2011).

Third, § 3161(h)(7)(A) requires the court to exclude periods of delay resulting from a continuance granted by a judge "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." The court must set forth in the record, "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial." *Id*.

Generally, an ends-of-justice continuance granted to one defendant applies to all co-defendants. *United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993) (establishing the co-defendant rule). This exclusion is not automatic—in order to apply one co-defendant's ends-of-justice continuance to another co-defendant, the period of delay must be "reasonable." *United States v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999); *United States v. Henry*, 984 F.3d 1343, 1350 (9th Cir. 2021). The reasonableness assessment occurs on a case-by-case basis due to the "fact-bound nature of the inquiry." *Hall*, 181 F.3d at 1062 (internal citations omitted). The court looks at the "totality of the circumstances." *United States v. Messer*, 197 F.3d 330, 337 (9th Cir. 1999). This analysis requires close attention to "whether the delay was necessary to achieve its purpose and to whether there was any actual prejudice suffered by the [defendant]." *Id*. (internal citations omitted).

A primary purpose of the STA is to enable joint trials where appropriate. *Id*. at 338. Against this backdrop, the *Hall* court found the application of an ends-of-justice-exclusion

against one co-defendant was not reasonable when the other co-defendant sought a continuance

to negotiate a plea agreement. 181 F.3d at 1063. The Ninth Circuit found the purpose of the

delay was not to facilitate a joint trial, but rather "to eliminate the need for a joint trial by

achieving a plea agreement." *Id*. For similar reasons, the Ninth Circuit has found it is

unreasonable to apply an ends-of-justice exclusion to a co-defendant where the co-defendant is

set for an earlier trial in a different judicial district. *Messer*, 197 F.3d at 338.

### b. Additional Relevant Facts

The following timeline summarizes the events and motions that are relevant to the

parties' arguments and the Court's legal analysis under the STA in the first case (Case No. 19-

186):

- <u>July 29, 2019</u>: Mr. Jackson was arraigned on the superseding indictment. [ECF 47].
- <u>September 16 and 17, 2019</u>: Mr. Jackson's co-defendants Mr. Scott and Mr. Barajas filed Motions to Continue. [ECF 58, 60].
- <u>September 23 and 24, 2019</u>: Mr. Jackson filed two Motions to Sever. [ECF 67, 69].
- <u>September 25, 2019</u>: The Court held in abeyance Mr. Scott's motion to continue and granted Mr. Barajas's. [ECF 70].
- <u>September 27, 2019</u>: The government moved to dismiss Mr. Jackson, [ECF 74], and the Court granted the dismissal. [ECF 76].

Shortly thereafter, Mr. Jackson and Ms. Petrovic were reindicted together in the second

case. The additional events and motions are relevant to the parties' arguments and the Court's

legal analysis under the STA in the second case (Case No. 19-458):

- <u>October 9, 2019</u>: Mr. Jackson and Ms. Petrovic were reindicted. [ECF 1].
- <u>October 11, 2019</u>: Ms. Petrovic—but not Mr. Jackson—was arraigned. The Court set trial to begin on December 10, 2019. [ECF 9].
- <u>November 26, 2019</u>: The government moved to reset the trial date. [ECF 26]. Ms. Petrovic did not oppose the continuance.
- <u>November 27, 2019</u>: The Court granted the continuance with an ends-of-justice finding. [ECF 28].
- <u>January 14, 2020</u>: Mr. Jackson was arraigned. [ECF 42, 44].

Mr. Jackson was not arraigned in the second case until January 14, 2020 because he was being held in custody by the state of Washington on state charges and there were various delays in his transportation from state to federal custody. Gov't's Mot. to Continue, Case No. 19-458 [ECF 26] at 2.[6]

### c.  Mr. Jackson's Speedy Trial Clock Calculations

Mr. Jackson argues that his speedy trial clock began running on July 29, 2019 when he was arraigned in the first case and made his initial appearance. Def.'s Reply, Case No. 19-458 [ECF 226] at 5. He concedes that his Motion to Sever filed on September 23, 2019 in the first case stopped his clock—at this point, 56 days had elapsed. *Id*. at 8.

Mr. Jackson argues that his speedy trial clock began running again when he was arraigned and made his initial appearance in the second case on January 14, 2020. *Id*. Under his calculation, his speedy trial clock expired (reached 70 days) on January 28, 2020 at the latest. *Id*.

### d.  The Government's Speedy Trial Clock Calculations

The government agrees that Mr. Jackson's clock began running when he made his initial appearance on July 29, 2019. Gov't's Resp., Case No. 19-458 [ECF 222] at 4. But the government argues his clock stopped running when his co-defendants filed motions to reset the trial date on September 16 and 17, 2019. *Id*. Under this scenario, Mr. Jackson would have 21 days left on his speedy trial clock headed into the second case. *Id*. at 5.

The government contends that Mr. Jackson's speedy trial clock never started to run in the second case because the government's trial continuance motion and the Court's ends-of-justice

---

[6] The Court notes that the parties' Speedy Trial Act Arguments have shifted over time. For example, Mr. Jackson at one point argued that delays in transportation should be counted against his speedy trial clock but later abandoned this argument. *See* Def.'s Reply in Supp. [ECF 226] at 8. Likewise, the government's position has shifted. Initially, the government argued that Mr. Jackson's speedy trial clock never began running in the first case due to a co-defendant's motion prior to his arraignment. Gov't's Resp. [ECF 222] at 2–3. The Court does not respond to the parties abandoned Speedy Trial Act arguments.

finding kept Mr. Jackson's speedy trial clock tolled. *Id*. at 3. The government argues that it is reasonable to apply the Court's ends-of-justice exclusion to Mr. Jackson because the two co-defendants were ordered to be tried together from the start of the second case and Mr. Jackson had not tried to sever himself from Ms. Petrovic. *Id*. Therefore, Mr. Jackson still has 21 days left on his speedy trial clock in the second case. *Id*. at 5.

### e. The Court's Calculation of Mr. Jackson's Speedy Trial Clock in the First Case (Case No. 19-186)

I find that when Mr. Jackson was arraigned on the superseding indictment on July 29, 2019, his speedy trial clock began running and he reset the clock for all co-defendants. 18 U.S.C. § 3161(c)(1); *Henderson*, 476 U.S. at 323 n.2.

I agree with Mr. Jackson that his speedy trial clock stopped running on September 23, 2019 on his Motion to Sever. The Ninth Circuit makes clear that motions to sever require a hearing and that these types of motions stop a defendant's speedy trial clock from when they are filed. *Medina*, 524 F.3d at 983. Therefore, Mr. Jackson had 14 days left on his speedy trial clock when he was dismissed from the first case.

 Mr. Scott and Mr. Barajas's motions to continue did not stop Mr. Jackson's speedy trial clock on September 16 or 17, 2019, because motions to continue do not require hearings. *See Medina*, 524 F.3d at 978. As such, these motions would not stop the speedy trial clock until they were held in abeyance or ruled on by the Court on September 25, 2019—after Mr. Jackson filed his Motion to Sever.

Because the government sought Mr. Jackson's dismissal from the first case and reindicted him on the same offenses and other offenses required to be joined with the first offense in the second case, Mr. Jackson's speedy trial clock tolled and did not reset between the

dismissal in case one and reindictment in case two. *See* 18 U.S.C. § 3161(h)(5); *Barraza-Lopez*, 659 F.3d at 1220 n.5.

### f. The Court's Calculation of Mr. Jackson's Speedy Trial Clock in the Second Case (Case No. 19-458)

On the facts in this case, I find that it is reasonable to apply the excludable delay from the Court's November 27, 2019 Order to Continue to both Mr. Jackson and Ms. Petrovic. *See Hall*, 181 F.3d at 1062. Therefore, Mr. Jackson's speedy trial clock has yet to begin running in the second case and 14 days currently remain.

I find that in this case it is reasonable for Mr. Jackson's speedy trial clock to be tolled before he made his first appearance or arraignment because (1) the purpose of the government's motion and the Court's order to continue was to ensure a joint trial; (2) the government communicated with Mr. Jackson's counsel in making the motion; and (3) there were numerous delays in transporting Mr. Jackson from state to federal custody that necessitated the trial be continued for both defendants to undertake a joint trial.

Facilitating joint trials is a primary consideration of the STA. *Messer*, 197 F.3d at 337. The government's Motion to Continue was made with the express intent of ensuring that Mr. Jackson and Ms. Petrovic were tried together. Martin Decl., Case No. 19-458 [ECF 27] at ¶ 3. The motion specifically stated that the defendants were jointly charged in the indictment and that "the government contemplates that they would be joined for trial." Gov't's Mot. to Continue, Case No. 19-458 [ECF 26] at 2.

What Mr. Jackson may have lost in this case was the opportunity to be heard and potentially oppose the government's Motion on the record. However, the motion and the government's corresponding declaration demonstrate that the government actively communicated with Mr. Jackson's counsel about continuing the trial. *Id*. 2–3 (discussing

19 – OPINION AND ORDER

communications with counsel for Mr. Jackson) The government went so far as to suggest trial dates to the Court that worked to accommodate defense counsel's pre-planned out-of-state travel. *Id*. at 2.

Due to the logistical challenges in transporting Mr. Jackson from state to federal custody and the public's interest in the efficiency afforded by a joint trial, I find the Court had no reasonable alternative but to continue the trial. The trial had been set in a relatively short period of time after the re-indictment. That time period simply was not enough time to secure Mr. Jackson's presence from state custody in time for trial. Likewise, I find that there was no prejudice to Mr. Jackson by the Court granting the government's continuance and applying this ends-of-justice exclusion to Mr. Jackson's speedy trial clock before his arraignment. Where the facts as they developed practically demanded a continuance, the Court cannot imagine Mr. Jackson's objection altering the outcome of its decision. The only reasonable course was the one the Court chose to take, and Mr. Jackson cannot claim the application of the STA exclusion prejudices him. Therefore, I DENY Mr. Jackson's Motion to Dismiss Count Five of the indictment with prejudice. Def.'s Mot. to Dismiss, Case No. 19-458 [ECF 112]. These are the very reasons why I found the ends of justice outweigh the best interests of the public and the defendants in a speedy trial and therefore found excludable delay under 18 U.S.C. § 3161(h)(7)(B)(i)) when I granted the government's motion on November 27, 2019. *See* [ECF 28].

## CONCLUSION

For the above reasons, I DENY Mr. Jackson's Motions to Dismiss [ECF 112], [ECF 113], and [ECF 114].


IT IS SO ORDERED.

DATED this _25_ day of October, 2021.


*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge