IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA, )
Plaintiff, ) Case No. 3:19-cr-00458-MO-1
v. )
JOHNL JACKSON, ) March 11, 2022
Defendant. ) Portland, Oregon

**Jury Trial - Day 5**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE MICHAEL W. MOSMAN

UNITED STATES DISTRICT COURT SENIOR JUDGE

APPEARANCES

FOR THE PLAINTIFF: Ms. Pamela Paaso
Ms. Ashley Cadotte
Ms. Suzanne A. Miles
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

FOR THE DEFENDANT: Mr. Per C. Olson
Ms. Megan McVicar
Hoevet Olson, PC
1000 S.W. Broadway, Suite 1740
Portland, OR 97205

COURT REPORTER: Bonita J. Shumway, CSR, RMR, CRR
United States District Courthouse
1000 S.W. Third Ave., Room 301
Portland, OR 97204
(503) 326-8188
bonita_shumway@ord.uscourts.gov

INDEX

(Jury Trial Day 5 - March 11, 2022)

Jury Note C Telephone Conference 725

Verdict 731

(P R O C E E D I N G S)

(March 11, 2022; 8:51 a.m.)

* * * * *

(A telephone conference is held with counsel as follows:)

THE COURTROOM DEPUTY: Thank you. We have everyone on the line now, so here is Judge Mosman.

THE COURT: Before I take up Juror Note C, I just need to say that it needs to be easier for us to reach all of you, and you need to be accessible by your cell phones, and then I need to be able to call for a phone conference about juror notes and have it happen when I said it would happen, not eight minutes later.

So Juror Note C, I'll read into the record. It says, "Instruction 29 and verdict form do not align on the date. Count 6 instructions, September 3, Oregon to Washington. Count 6 verdict form, September 3 and September 6. Please clarify the date/event we are to decide on."

So the answer at one level is fairly easy to give to the jury. What has happened is Instruction 29 regarding Count 6 merely cross-references the earlier instruction regarding Count 5. And so the reason they're asking the question about Count 6 and not about Count 5 is that Count 5 lays out two different dates, a set date, September 3 for the completed crime, and a date range, September 3 to September 6, for

attempt and for conspiracy.

So Count 6 really, when you get done with the cross-reference, does the same thing: sets out a date for the completed crime, September 3, and then cross-references a date range for the attempt and the conspiracy. And they just don't have in Instruction 29, written out in a sentence, the date range, and they're, I guess, not making the cross-reference that Instruction 29 tells them to make.

So at one level it's easy, we just tell them that the Count 6 instructions cross-reference the date range for attempt and for conspiracy, and for those two theories of Count 6, they should apply the same date range that is applied in Count 5.

There is a wrinkle to that, and that is that the verdict form for both Count 5 and Count 6 both gives a date range not a date. It gives the date range of September 3rd to September 6th, not the date of September 3rd for the completed crime.

So, of course, the verdict form should give the date range for both Count 5 and Count 6 for attempted conspiracy, but only should have September 3rd for the completed crime, both as to Count 5 and to Count 6.

Now, they may not be hung up on that because they're not asking about Count 5, which has that same problem as Count 6, but when I explain this to them, unless the parties object, I feel like I should tell them that the verdict form has a date

range for the completed crime for Count 5 and Count 6, and that that's erroneous, they should just go with the date given in the two instructions, the instruction for Count 5 and the instruction for Count 6.

So having explained it that far, does anyone disagree with my take on the question and my proposed answer?

I'll start with the United States.

MS. MILES: This is Suzanne Miles.

THE COURT: I'm sorry. Ms. Miles, I'm going to interrupt you only because I can't hear you. Your voice is coming in pieces.

THE COURTROOM DEPUTY: If you're on speaker, you might want to take it off speaker phone.

MS. MILES: Can you hear me now?

THE COURT: Yes. Go ahead.

MS. MILES: Can you hear me better?

THE COURT: Yes.

MS. MILES: So I think this all arose because of the final red lining that the defense put in yesterday where they changed the jury instructions from this range to just on or about September 3rd. I didn't object to that because the jury instruction explaining "on or about" to me made it so that it was still accurate, being between September 3rd and September 6th. And I think that's the easiest fix is to instruct the jury that instead of reading this as on or between

September 3rd and September 6th, they should read it as on or about September 3rd, which would allow them to find that this conduct happened within a span of days of September 3rd, as the on or about instruction tells them.

MR. OLSON: Your Honor, this is Per Olson. I agree with that, and I suppose that I disagree with Your Honor where you suggest that the completed date be on or about -- or the completed offense be on or about September 3rd, and the attempt or conspiracy be the date range. These two Counts 5 and 6 relate to a specific offense; that is, crossing the river from Oregon into Washington on September 3rd, as the evidence pointed out. And so I think -- whether that's a conspiracy or an attempt or a completed crime, it's on or about September 3rd. It's not any different whether it's a completed offense or an inchoate crime with respect to those two counts.

There's another count of transportation later on, obviously is coming back from Washington to Oregon to the Lombard house, which is alleged and pled and instructed as a separate attempt, conspiracy, and the crime itself. To avoid confusion, I agree with Ms. Miles that 5 and 6 should be treated as on or about September 3rd, with respect both completed and inchoate crimes.

THE COURT: So I'm not sure that's the same answer Ms. Miles proposed.

Is that what you're saying, Ms. Miles, don't give

them any -- tell them that the verdict form for 5 and 6 should be read on all three theories of each count to be on or about September 3rd?

MS. MILES: Yes, that's what I'm proposing. And then refer them to the instruction about on or about, please.

THE COURT: All right. I'm happy to do that. It obviously changes the verdict form midway, but if no one objects, then I'll explain to them that that's how I want them to apply the date to Count 5 and Count 6.

I'll write that up as a written answer and send it to you all, and then I'll ask you to confer very quickly, within just a couple minutes, whether you object or not to the written answer we're going to give them.

MS. MILES: Thank you, Your Honor.

THE COURT: So that leaves a sort of an enigmatic piece of this question, which is, "Please clarify the date/event we're to decide on."

So we've clarified the date. I don't know what to say about clarifying the event, other than if the parties agree, I can tell them Count 5 and Count 6 involve the trip up from Eugene to Washington with both victims, and Count 9 involves the alleged trip from Washington to the Lombard house with S.F., or say nothing, since I'm not sure what the question is asking.

For the United States, any suggestions?

MS. MILES: Well, Your Honor, I'm always pro saying nothing, but I think that what you did say is accurate, and that's what the government's position is, so I'm honestly fine with either way that you want to do it.

THE COURT: Mr. Olson?

MR. OLSON: My gut tells me if you explain the first part that we've agreed upon, that it will be clear to them, and that we really shouldn't at this point, unless they have a more specific question, we shouldn't really explain, you know, what event these counts relate to. I think that was probably clear from the closing argument.

THE COURT: Thank you very much.

I'll be sending you a written proposed answer to this question. I want a response back two minutes after I send it to you whether you object or not. If you do object, you can ask for more time to tell me your objection, but I just need to know whether I can give them this answer, because if you agree, then two minutes later I'll give it to them.

Thank you all. We'll be in recess.

(A recess is then taken.)

(Open court; the jury is not present.)

THE COURT: I want to bring up one juror matter with you before we receive the verdict. I'm not committing to the juror number, but I'm pretty sure it's Juror No. 2 -- I'll confirm later -- came to me after they told us they received a

verdict. She told me that yesterday someone that she believed -- but isn't sure, but believes is a member of the group of people who were with one of the victims saw her -- actually, I should nail this down, but I think in the lobby and said, "I like your sweater." And she didn't tell any other jurors about it until after they'd returned a verdict, and she says it had zero impact on her deliberations in any way.

Do you wish to do anything about that, Mr. Olson?

MR. OLSON: So she was sharing that it was somebody within the social group of one of the victims?

THE COURT: She believed it. She couldn't be sure because it was a loose group of people, but she believed that it was the social group of one of the victims.

Let's do this. I'm not going to not take the verdict now. So you don't have to decide right now. You think about it and decide what, if anything, to do.

But I don't think any further inquiry of her is necessary. She's told me the whole story, and it's what I told, just a brief encounter.

All right. Please bring in the jury.

(The jury enters the courtroom.)

THE COURT: Please be seated.

Members of the jury, I'm told you have a verdict. Is that correct?

JUROR NO. 6: Correct.

THE COURT: And is it a unanimous verdict?

JUROR NO. 6: Yes.

THE COURT: Please forward the verdict form to Ms. Scheele.

In a moment you may be asked if what I'm about to read out loud is in fact your true verdict, so listen as I read it and make sure it comports with your vote in this case.

As to Count 1, the jury has found the defendant guilty and agrees on both of the sub-elements; that is, on force, fraud or coercion, and under the age of 18.

As to Count -- excuse me. That's as to Count 1, theory 1.

And then as to Count 2, theory 2, I'll call it, they've agreed to both force, fraud and coercion, and under the age of 18.

As to Count 2, sex trafficking of M.T., they found the defendant guilty, and have not filled in the box regarding benefiting financially, but have filled in the box on recruiting, enticing, harboring.

And then agree that she was 14 but not 18.

THE DEFENDANT: I didn't do nothing.

THE COURT: As to Count 3, the jury has found the defendant guilty, and have checked both the box of recruiting, the box of benefiting financially, and the box of age.

As to Count 4, the jury has found the defendant

guilty and has checked both the box of recruiting, of benefiting financially.

As to Count 5, the jury has found the defendant guilty and has found that -- and has checked the box for the completed crime, the attempt, and the conspiracy.

As to Count 6, the defendant has been found guilty, also as to the completed crime, the attempt, and the conspiracy.

He's been found guilty of Count 7, sex trafficking of S.F., and the three boxes have been checked; that is, guilty on recruiting, on benefiting financially, and agree as to the age restriction.

As to Count 8, the defendant has been found guilty, and the box has been checked for recruiting, benefiting financially.

And as to Count 9, the defendant has been found guilty as to the completed crime theory, the attempt theory, and the conspiracy theory.

Signed and dated this date.

Do you wish me to poll the jury, sir?

MR. OLSON: Yes, please, Your Honor.

THE COURT: I'm going to ask you by number if this represents what I've just read, your true verdict.

Juror No. 1?

JUROR NO. 1: Yes.

THE COURT: Two?
JUROR NO. 2: Yes.
THE COURT: Three?
JUROR NO. 3: Yes.
THE COURT: Four?
JUROR NO. 4: Yes.
THE COURT: Five?
JUROR NO. 5: Yes.
THE COURT: Six?
JUROR NO. 6: Yes.
THE COURT: Seven?
JUROR NO. 7: Yes.
THE COURT: Eight?
JUROR NO. 8: Yes.
THE COURT: Nine?
JUROR NO. 9: Yes.
THE COURT: Ten?
JUROR NO. 10: Yes.
THE COURT: I know you're numbered 12, so I'll call you that. 12?
JUROR NO. 12: Yes.
THE COURT: And 13?
JUROR NO. 13: Yes.
THE COURT: Thank you for your service in this case. You're now dismissed as the jury in this case. We're grateful

for what you've done and been able to help us with this complicated issue.

You are free from any further obligations in this case. I always invite jurors who want to come chat with me after the trial is over and feel like they have the time to do so to come to my chambers, and I'll answer any questions you might have and try to talk with you for a little bit to decompress a little bit. But that is not a command performance. Anybody who doesn't want to, let Ms. Scheele know -- or rather if you want to, let her know and she'll collect those who want to come back to my chambers. The lawyers involved and their clients and the family members will not disturb you on your way out. We'll make sure of that, and you'll be able to go on about your business.

Thanks again for your service.

Please rise for the jury.

(The jury is discharged and leaves the courtroom.)

THE COURT: Please be seated.

I'm going to set sentencing in this case for June 6th at 10:30. June 6th, 10:30.

MR. OLSON: Judge, I do have a trial set that week. We can leave it for now, I guess.

THE COURT: Do you want me to set a different date right now or wait and see?

MR. OLSON: We can wait. We can wait.

THE COURT: All right. Given the guilty verdict and given the Pretrial Services report that I have received in the middle of trial, it's my intention to take the defendant into custody.

Do you wish to make any contrary argument?

MR. OLSON: Yes. Your Honor, we would ask that Mr. Jackson remain out of custody. He had, it sounds like, a recent slip with cocaine use, which I found out about yesterday, but he has been in excellent compliance with the other terms of his pretrial release. He's been in excellent contact with myself, his attorney. He has a very supportive family who is here today, children in Vancouver, and he's very close to the mothers of both of those children. So he's very tied to the community. And obviously this has been hanging over his head for some time and he has not attempted to flee the jurisdiction or do anything inappropriate or risky during the course of this trial.

So overall, I would urge the Court to allow him to remain out of custody on the ankle bracelet which he's on, and let him remain out of custody pending sentencing.

THE COURT: Thank you.

First, the guilty verdict changes the burden of proof under the statutory scheme. His own recent performance has been troubling, including an element of falsehood about it, urging the officer not to tell the Court about it. So I am

going to take him into custody immediately.

We'll be in recess.

THE COURTROOM DEPUTY: All rise. Court is in recess.

(Proceedings concluded at 1:13 p.m.)

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause. A transcript without an original signature or conformed signature is not certified.

*/s/Bonita J. Shumway* *April 5, 2022*

BONITA J. SHUMWAY, CSR, RMR, CRR DATE
Official Court Reporter